May it please the Court, my name is Matthew Dunaway. I'm counsel for appellant James Hines. In the brief time I have this morning, I would like to address three issues. One, why this appeal is not moot in light of the foreclosure. I think you all covered that. Don't spend your time on that. Thank you, Your Honor. We're convinced that it's not moot. Maybe it ought to be, but it's not. Yes, sir. I understand, Your Honor. So two issues this morning. One, whether the bankruptcy aired as a matter of law by finding that its 2014 order granting an initial motion to avoid lien filed by the debtor had raised judicata effect on the debtor's subsequent motions to avoid the same lien. And secondly, I would like to address whether the bankruptcy court aired as a matter of law in its calculation on the extent to which SIG's loan was avoided by the debtor's 2014 motion to avoid judicial lien. So it's kind of interesting, right? Because although the court found that there was raised judicata effect, it then went on and addressed the merits, right? Yes, Your Honor. That is rather interesting. And as we expressed in our brief, we believe that this is one matter and thus raised judicata would not apply. Maybe, I mean, you could do whatever you want. It's your time. But maybe you should start with the merits because even if you win on raised judicata, you're still going to have to address the merits. Absolutely. I would love to address Lehman and 522-F. As far as in my opinion this case is concerned, especially as a regular practitioner of bankruptcy court, we're very familiar with Lehman, its implications, 522-F, and how those calculations are made. And we've been familiar for 20 years because that's the law in the 11th Circuit. And that's when I got this appeal. I was a little at a loss as to what to do with it. How can I help my client? Because obviously, Colich, which is an 8th Circuit case, does not overrule an 11th Circuit case. But as I continued to look at it and found Tarras, Henry Tarras, 2005, 11th Circuit case. An unpublished opinion, which we're not bound to follow and which can't possibly. A later opinion can't overturn an earlier opinion in the 11th Circuit and an unpublished later opinion certainly can't. I completely agree, Your Honor, and I'm not saying that Tarras does overturn Lehman. I guess what I wanted to do with my time was fill out the concerns I brought up in the brief as to the 11th Circuit having the Lehman opinion and the Tarras opinion, even though it is unpublished. And that is this, with how the court interpreted the statute. In Lehman, we use this common sense, the court used a common sense approach to avoid the absurd. They looked at 522F2A, specifically 3, F2A3, and said that if we use the debtor's value, then we have an absurd outcome. And we should instead replace the total value. And that's what has been the law. What's interesting to me with this case is the 11th Circuit has an opinion unpublished in Tarras, but they followed a ruling in the 8th Circuit where they said we need to follow the statutory language of 522F. So even though both courts were really intent at looking at the congressional intent, both courts did it differently. Sorry to interrupt, but hasn't the Supreme Court said that although we follow the text of the statute, and that's the end of the matter if it's clear, there is an exception, which is if the result would be absurd. I mean, hasn't the Supreme Court told us that where the result is absurd, then we do not just blindly follow the text of the statute? Absolutely. I agree, Your Honor. The issue I would like to bring up is the potential confusion that we have where in one situation in the 11th Circuit, we interpret the statute broadly so as not to, and not strictly, we actually replace language in subsection 3. But under another fact scenario, different fact scenario, that one in Tarras, which is similar to ours. Now, you're assuming that Tarras is the law of the circuit, and it is not. It is not. It's the law of that particular case because nobody held the mandate, tried to take it en banc. That doesn't mean that it is the law of the circuit or doesn't violate the law of the circuit. The law of the circuit is published decisions. I know that's difficult. I don't want to take up your other four minutes and a half explaining to you why that's the rule. But everybody agrees that's the ground rule. An unpublished opinion disposes of that case, and if nobody tries to take it en banc, that's the disposition of that case.  So we don't have in the future a division of the law. We have Lehman, and that's the only law of the circuit. I guess my question, Your Honor, is if a similar situation comes up that was similar in Tarras, are we to follow Lehman? Easy. You follow Lehman. Yes, sir. I understand. Now, you may have a good shot at getting the district court to follow Tarras because sometimes they blur the distinction. But I promise you if it comes up to a panel of this court, we're going to follow the published opinion. Yes, sir. Thank you, Your Honor. Thank you. Mr. Maples. Chief Judge, judges, may it please the court. My name is Stuart Maples, and I represent Scottsboro Investment Group. Just as a little bit of background, Scottsboro Investment Group obtained a judgment of approximately $600,000 against the debtor, Mr. Hines. They recorded that judgment properly in the probate court of Jackson County, and it is, according to state law, an unavoidable lien. According to bankruptcy law 547 and 548, it is an unavoidable lien except as it impairs exemptions. When we look at 522 and we look at Lehman, the result, in my mind, is consistent. I don't think you have to reach to necessarily the absurd result in order to find that Lehman is good law and is the appropriate law. And the reason I say that is that when you look at the entirety of 522 and you look at 522A, it says, and paraphrase, well, I won't paraphrase it. I'll read. Well, not 522, 522F1. Notwithstanding any waiver of exemptions, but subject to paragraph 3, the debtor may avoid the fixing of a lien on interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled under subsection B. Alabama is an opt-out state. The exemption that applies in this case is $5,000. When you go through then and look at the calculation standard, you have to read the section as a whole. So we're only looking at, no matter what, with this language, we're looking at the exemption and the preserving of an exemption to a debtor. And I would suggest that the fair reading of 522F, without having to go to the absurd result or quirky drafting, is that the debtor's interest in property, as expressed in the last sentence of A, the debtor's interest in the property for the purposes of this is his exemption. And when you read it that way, you actually get to the appropriate calculation that was reached by the bankruptcy court and the district court in this matter, which would leave the debtor $5,000. That's his exemption amount. If you follow the other purported result, you would leave a negative to our client of $539,000, which would be a zero recovery, and you would leave the debtor with $61,000 after the sale of this property. That cannot be the intent of 522, because it's to preserve exemptions. I would suggest that a debtor who has discharged a just debt of $600,000 is not entitled to then keep $61,000 when his applicable state law exemption is $5,000. I would just add, and I know the court wants to dwell on the other two, I do think that foreclosure creates mootness in this case. It creates what now? Mootness. I think that it is moot, because we now have no valuation and no liens, but rather rights of redemption. And those rights of redemption, there's no valuation of return to equity now to the debtor. It's only the debtor's being exercised their right of redemption if they have any, and our ability as a junior lien holder to exercise our right of redemption if we have any. But are you saying it would be absurd for the debtor to do that, exercise the right of redemption given the circumstances and the figures, the math? Well, I would suggest that there's probably not enough information in the record as it stands right now. But I believe that the debtor may have forfeited their right of redemption by remaining in the property more than 10 days after foreclosure. But that's not in the record. That is not in the record. That is not in the record. And maybe if we're going to go with that, something like that. I don't see how it's moot. I mean, how would it be moot? We still have this possibility that the debtor can go ahead and exercise the right of redemption, right? And that would resurrect, I guess, this question. Sure. I follow. I follow. I do think Lehman is the law of this court. I don't think that there's any justification to reverse Lehman. And as this Court has pointed out, Tannis is not the law of this court and Tannis is wrong. Tannis is wrong. Okay. Thank you very much. Thank you. Mr. Dunaway, if you have any reply. Just briefly, Your Honor. I would suggest that my client would like an opportunity, as he has stated before, to go back and potentially amend his schedules. And that opportunity was denied when the bankruptcy court denied via res judicata his ability to do that. And he is asking for that. Okay. Thank you. Thank you, Your Honor. We'll take that case under submission and stand in recess until tomorrow morning. Thank you very much. How could I forget? Sure. Oh, my gosh. Okay. You scare those lawyers. Save the best for last. Y'all didn't get the order. No. All right.